WO                                                                                                                    SKC

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Anthony Cecil Baker,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Jarrot J. Tevault, et al.,<br><br>　　　　　Defendants. | No.  CV 20-01960-PHX-JAT (JZB)<br><br>**ORDER**<br>**AND**<br>**ORDER TO SHOW CAUSE** |

Plaintiff Anthony Cecil Baker brought this civil rights action through counsel pursuant to 42 U.S.C. § 1983.  Before the Court are the parties' Stipulated Motion for Dismissal of Defendant Tevault as to all State Law Claims (Doc. 9) and Defendant Tevault's Partial Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. 10.)  The Partial Motion to Dismiss is fully briefed.  (Docs. 11, 13).

The Court will grant the Stipulated Motion to Dismiss Defendant Tevault as to all State Law Claims; order Plaintiff to show cause why the Court should not also dismiss Defendant City of Surprise as to these claims; and grant in part and deny in part Tevault's Partial Motion to Dismiss.

**I.     Complaint**

In his five-count Complaint, Baker sues Defendants City of Surprise police officer Jarrot J. Tevault and the City of Surprise (or "the City") based on Tevault's alleged unlawful conduct, consisting of constitutional violations and state law torts, during a

November 2018 traffic stop in Surprise. (Doc. 1.) Baker relevantly alleges the following facts:

On November 8, 2018, Baker, who was then sixty-seven years old and partially disabled, was driving with his ten-year-old grandson, travelling eastbound on West Bell Road at or near the intersection with North 165th Ave in Surprise, Arizona. (*Id.* ¶¶ 7−8.) At some point after passing through the intersection, Baker realized that a City of Surprise patrol unit was behind him with its siren lights illuminated. (*Id.* ¶ 9.)

Baker was driving in the left-most lane, and upon realizing the patrol unit was trying to stop his vehicle, he was unable to pull to the right side of the road due to traffic. (*Id.* ¶¶ 9−10.) Baker instead continued his course for approximately 1/4 mile to North Sunrise Blvd, where he turned left and pulled into the first area where it was safe to do so, which was the parking lot of the guard gate entrance to Sun City Grand. (*Id.* ¶¶ 10−11.)

Defendant Tevault was the police officer driving the patrol unit, and he exited his vehicle and approached Baker's vehicle. (*Id.* ¶ 12.) Baker rolled down his driver's side window to speak to Tevault, but Tevault did not engage in conversation and instead angrily ordered Baker out of his vehicle. (*Id.* ¶¶ 12−13.) Then, when Baker opened the door to get out, Tevault forcefully grabbed Baker before he could step out and pulled him out of the vehicle, spun him around by his arm and shoulder, pushed him into the side of his vehicle while pulling his arm in an upward motion behind his back, and began kneeing Baker from behind in the upper leg and groin area. (*Id.* ¶¶ 13−14.)

With both of Baker's arms behind his back, Tevault began applying handcuffs to Baker, and when Baker asked what this was for, Tevault told Baker that he had failed to stop for a police officer. (*Id.* ¶ 15.) Baker responded that he could not stop anywhere at the time and began to ask Tevault if he had wanted him to stop "in the middle of . . . ," but Tevault did not let him finish, and in response to being questioned, pushed Baker from behind, against the driver's side door. (*Id.* ¶¶ 15−16.) Tevault then grabbed Baker around the head and neck and threw him to the ground with the full force of Tevault's weight landing on top of him. (*Id.*)

Once on the ground, Tevault applied a control hold and pain compliance technique to Baker's right arm, which was already compromised from a prior injury and surgery with hardware installation. (*Id.* ¶ 17.) Despite Baker offering no resistance, Tevault continued to bend and twist Baker's compromised right arm with increasing force and leverage. (*Id.*) Tevault stopped his attack only when supervising police officer Sergeant Garrick Boxberger instructed him to relax, stop, and stand Baker up. (*Id.* ¶ 18.)

Tevault did not activate his body-worn camera prior to his contact with Baker or during the use of force. (*Id.* ¶ 19.) Sgt. Boxberger did activate his body-worn camera, which captured some, but not all, of these alleged events. (*Id.* ¶ 23.)

The Surprise Police Department subsequently conducted an Internal Affairs Investigation of the incident and found that Tevault had violated Department Policies OPS 50 V.E. and UOF-01.III.C. (*Id.* ¶¶ 22, 25.)

Department Policy OPS 50 V.E., which was in effect at the time, states that

> all officers assigned a PDRD [personal digital recording device] shall activate the device to record all contacts with citizens in the performance of their official duties (e.g., calls for service, traffic incidents, etc.). Officers shall also activate their PDRD during emergency or pursuit operations. Officers are reminded to turn on the PDRD prior to arrival or start of contact (e.g., when observing a violation or upon arrival at a call) to record the event in its entirety.

(*Id.* ¶ 20.) The policy explains that PDRDs "are intended to capture unbiased accounts of police and citizen interactions . . . prevent and resolve complaints brought by the public and strengthen police transparency, performance and accountability." (*Id.* ¶ 21.)

Department Policy UOF-01.III.C, which was also in effect at the time, states that "when making an arrest, officers shall use only that force which is objectively reasonable and necessary under the circumstances." (*Id.* ¶ 24.)

Despite the Internal Affairs findings that Tevault violated multiple policies, the only discipline Tevault received was "oral counseling and remedial training on vehicle approach and investigative techniques." (*Id.* ¶ 26.)

As a result of Tevault's attack, Baker suffered injuries including, but not limited to, a left eye subconjunctival hemorrhage, multiple hematomas, injuries to both wrists, right upper leg injury, left elbow injury, back and neck injury, abrasions, and emotional trauma. (*Id.* ¶ 27.)

Baker asserts the following claims: in Count One, a Fourth Amendment excessive-use-of-force claim against Defendant Tevault; in Count Two, a First Amendment free speech/retaliation claim against Defendant Tevault; in Count Three, state law battery claims against Defendants Tevault and the City of Surprise; in Count Four, state law intentional infliction of emotional distress claims against Defendants Tevault and the City of Surprise; and in Count Five, a state law negligent hiring, supervision, and training claim against Defendant the City of Surprise.

**II.     Stipulated Motion to Dismiss**

In their Stipulated Motion to Dismiss, the parties agree to the dismissal with prejudice of all state law tort claims against Defendant Tevault. (Doc. 9.) The Motion is electronically signed by counsel for both Plaintiff and Defendants. (*Id.* at 1−2.) Because the dismissal is unopposed, the Court will grant the Stipulated Motion and dismiss with prejudice all state law tort claims against Defendant Tevault.

**III.    Defendants' Partial Motion to Dismiss**

**A.     Federal Rule of Civil Procedure 12(b)(6)**

Dismissal of a complaint, or any claim within it, for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) may be based on either a "'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121–22 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990)). In determining whether a complaint states a claim under this standard, the allegations in the complaint are taken as true and the pleadings are construed in the light most favorable to the nonmovant. *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 900 (9th Cir. 2007). A pleading must contain "a short and plain statement of the claim showing that the pleader is

entitled to relief." Fed. R. Civ. P. 8(a)(2). But "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what . . . the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (internal quotation omitted). To survive a motion to dismiss, a complaint must state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

As a general rule, when deciding a Rule 12(b)(6) motion, the court looks only to the face of the complaint and documents attached thereto. *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). If a court considers evidence outside the pleading, it must convert the Rule 12(b)(6) motion into a Rule 56 motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003). A court may, however, consider documents incorporated by reference in the complaint or matters of judicial notice without converting the motion to dismiss into a motion for summary judgment. *Id.*

**B.     Discussion**

In their Partial Motion to Dismiss, Defendants move to dismiss the following three claims: (1) the First Amendment claim against Defendant Tevault in Count Two, (2) the intentional infliction of emotional distress claim against Defendant Tevault in Count Three, and (3) the negligent hiring, supervision, and training claim against Defendant the City of Surprise in Count Five. (Doc. 10.)

**1.     First Amendment Claim**

"[T]he First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out. *Hartman v. Moore*, 547 U.S. 250, 256 (2006) (internal citations omitted). As such, "[t]he First Amendment protects a significant amount of verbal criticism and challenge directed

at police officers." *City of Houston, Tex. v. Hill*, 482 U.S. 451, 461 (1987). "The freedom of individuals to oppose or challenge police action verbally without thereby risking arrest is one important characteristic by which we distinguish ourselves from a police state." *Id* at 463. "Thus, while police, no less than anyone else, may resent having obscene words and gestures directed at them, they may not exercise the awesome power at their disposal to punish individuals for conduct that is not merely lawful, but protected by the First Amendment." *Duran v. City of Douglas, Ariz.*, 904 F.2d 1372, 1378 (9th Cir. 1990).

A viable First Amendment retaliation claim contains five basic elements: (1) an assertion that an official took some adverse action against an individual (2) because of (3) that individual's protected conduct, the action (4) chilled the individual's exercise of his constitutional rights, and (5) the action did not advance a legitimate state interest. *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir.2005). As to causation, the plaintiff has the burden of demonstrating that the exercise of his First Amendment rights was a substantial or motivating factor behind the defendant's conduct. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989). To make this showing, "[i]t is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must *cause* the injury. Specifically, it must be a "but-for" cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (citing *Hartman*, 547 U.S. at 260); *see also Ford v. City of Yakima*, 706 F.3d 1188, 1193 (9th Cir. 2013), *abrogated on other grounds by Nieves*, 139 S. Ct. at 1721−25 (the plaintiff must be able to prove that the officer's desire to chill his speech was a "but-for cause" of the allegedly unlawful conduct).[1]

---

[1] *Ford* involved a discretionary arrest of a motorist for a noise violation, where the motorist also questioned the officers' actions and accused them of being racially motivated, and the Ninth Circuit found that the plaintiff could show "a violation of his clearly established First Amendment right to be free from police action motivated by retaliatory animus, even if probable cause existed for that action." 706 F.3d 1188, 1190. In *Nieves*, the Supreme Court held, instead, that probable cause to make an arrest generally defeats a claim that the arrest was in retaliation for speech protected by the First Amendment, though

Defendants do not dispute that Baker alleges sufficient facts, taken as true, to state an excessive-use-of-force claim, but they argue that he does not also state a First Amendment retaliation claim simply because he alleges he spoke up during the encounter in which the alleged force was used. (Doc. 10 at 1, 7−8.) They further argue that any such claim would not survive qualified immunity because there is no analogous, controlling case that finds a separate First Amendment violation in this context. (*Id.* at 8.)

First, as to whether Baker states a First Amendment violation, Defendants argue that Baker fails to plausibly allege that his limited speech during the use-of-force incident caused Tevault's injurious conduct, in part because "Plaintiff alleges that Tevault commenced a physical assault on him before any words were spoken." (*Id.* at 7.) Then, when Baker allegedly questioned Tevault about the reason for his actions, Defendants point out that Tevault allegedly answered that Baker had not pulled over for a police officer. (*Id.*) From this, Defendants argue that the allegations show that Tevault was reacting to Baker's failure to promptly pull over, not to any protected speech, and the allegations do not raise even the "mere possibility" that Baker's limited speech was a substantial or motivating factor in Tevault's conduct. (*Id.* at 7−8.) Defendants point out that the Court must rely on its common sense and experience and, in so doing, assess whether there are "more likely explanations" for Tevault's conduct. (*Id.* (quoting *Iqbal*, 556 U.S. at 681).) Defendants maintain that, applying this principle here, Tevault's actions were more plausibly related to Baker's failure to stop and that "there are insufficient well-pled facts to connect Officer Tevault's alleged continued use of force to a First-Amendment-based retaliatory intent or motive." (Doc. 13 at 3.)

---

*Nieves* made an exception for circumstances, as in *Ford*, where the arrest was discretionary, if the plaintiff "presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." 139 S. Ct. at 1722−27. *Nieves* did not, therefore, abrogate or overrule *Ford*'s ultimate finding of a First Amendment violation based on the Ninth Circuit's finding of objective evidence of retaliatory intent.

According to the allegations in the Complaint, Tevault engaged in immediate, substantial force against Baker—including by physically pulling Baker from his vehicle, twisting his arms behind his back, and applying handcuffs—all allegedly in response to Baker's failure to pull over right away. (Doc. 1 ¶¶ 13−15.) The allegations also plausibly show, however, that Tevault engaged in a separate, more aggressive use of force against Baker when Baker began to question Trevault about how he expected Baker to pull over in the middle of the road. (*Id.* ¶ 16.) At this point, Tevault allegedly went from applying handcuffs to Baker while holding Baker's arms behind his back to pushing Baker against the car door, grabbing him by the head and neck, and throwing him to the ground, despite Baker's lack of resistance or any other, non-verbal provocation. (Doc. 1 ¶¶ 13−16.)

Construing the facts in Baker's favor, these allegations plausibly show that Tevault escalated his use of force in direct response to Baker's questioning Tevault about his implied expectation that Baker stop "in the middle of [Thunderbird Road]," rather than pull over after turning at an intersection, as Baker did. (*Id.*) Significantly, it was while Baker was questioning Tevault about the reasons for his actions and was in the middle of voicing his objections that Tevault allegedly ratchetted up his use of force, threw Baker against the car, and took him to the ground. (*Id.* ¶¶ 15−16.)

Defendants do not dispute that this sudden, additional use of force constitutes an adverse action; nor do they dispute that Baker was engaging in protected conduct when he questioned Tevault's reasons for forcefully pulling him from the car. Moreover, the right to question, criticize, or object to police conduct is unquestionably protected speech under the First Amendment. *Hill*, 482 U.S. at 461, 463. Applying common sense and experience to the situation, the Court is not persuaded, under the facts alleged, that Tevault's further aggressive actions while Baker was questioning him are more likely explained as a simple continuation of force and not, as Plaintiff alleges, a direct response to Baker's speech. (*See* Doc. 1 ¶¶ 15−16.) Accordingly, Baker alleges sufficient facts from which to plausibly infer that these actions were in retaliation for Baker verbally challenging Tevault. Likewise, it is plausible to infer that, by suddenly pushing Baker and taking him to the

ground, even while Baker was in mid-sentence, Tevault's actions were intended to—and did—"chill" Baker from further exercising his right to criticize and object to Tevault's actions. On these facts, Baker has stated a viable First Amendment retaliation claim.

Next, Defendants argue that Tevault is entitled to qualified immunity because no analogous, controlling Ninth Circuit or Supreme Court case has clearly established a constitutional violation under these circumstances. (Doc. 10 at 8.) Government officials are entitled to qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In deciding if qualified immunity applies, the Court must determine: (1) whether the facts alleged show the defendant' s conduct violated a constitutional right; and (2) whether that right was clearly established at the time of the violation. *Pearson v. Callahan*, 555 U.S. 223, 230-32, 235-36 (2009) (courts may address either prong first depending on the circumstances in the particular case).

Whether a right was clearly established must be determined "in light of the specific context of the case, not as a broad general proposition." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The plaintiff has the burden to show that the right was clearly established at the time of the alleged violation. *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002); *Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir. 1991). Thus, "the contours of the right must be sufficiently clear that at the time the allegedly unlawful act is [under]taken, a reasonable official would understand that what he is doing violates that right;" and "in the light of pre-existing law the unlawfulness must be apparent." *Mendoza v. Block*, 27 F.3d 1357, 1361 (9th Cir. 1994) (quotations omitted). Regardless of whether the constitutional violation occurred, the officer should prevail if the right asserted by the plaintiff was not "clearly established" or the officer could have reasonably believed that his particular conduct was lawful. *Romero*, 931 F.2d at 627.

When a motion to dismiss raises qualified immunity as a defense, the court assesses whether the operative complaint alleges sufficient facts, taken as true, to withstand

qualified immunity. *Keates v. Koile*, 883 F.3d 1228, 1235 (9th Cir. 2018). Further, "[i]f the operative complaint 'contains even one allegation of a harmful act that would constitute a violation of a clearly established constitutional right,' then plaintiffs are 'entitled to go forward' with their claims." *Id.* (quoting *Pelletier v. Fed. Home Loan Bank of San Francisco*, 968 F.2d 865, 872 (9th Cir. 1992)).

Defendants' assertion of qualified immunity is based on the premise that no controlling cases clearly establish that it is a First Amendment violation to use force "*before* any protected speech occurs, and where no other facts, including statements by the officer suggest a retaliatory motive." (Doc. 13 at 3 (emphasis in original).) Defendants, however, misconstrue the allegations in the Complaint. As noted, although Baker alleges that Tevault engaged in considerable force before any protected speech occurred, the facts alleged also plausibly show that Tevault escalated his use of force, even though Baker was not resisting and was already being placed in handcuffs, after Baker verbally challenged Tevault's actions. Even without direct statements from Tevault revealing a retaliatory motive, the alleged facts support a plausible inference that Tevault engaged in additional, more aggressive uses of force because of Baker's protected speech and that Tevault would not have ultimately thrown Baker to the ground with his full weight on top of Baker and continued to bend and twist his arms "but for" Baker's protected conduct. *Cf. Mendocino Env't Ctr. v. Mendocino Cty.*, 192 F.3d 1283, 1302 (9th Cir. 1999) (finding in the conspiracy context that direct evidence of "improper motive" is rarely available, and "it will almost always be necessary to infer [improper motive or intent] from circumstantial evidence").

Based on these allegations, the right at issue is the right of an otherwise non-resistant arrestee to be free from additional adverse actions by the arresting officer for exercising his right to question the officer's actions at the time of the arrest. Even though a finding of qualified immunity does not require "a case directly on point, . . . existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011).

Here, as already alluded to above, several controlling cases prior to the events in this action put the right not to suffer adverse action from police for speaking up during an arrest or traffic stop beyond dispute. *See, e.g.*, *Hill*, 82 U.S. at 462−3 (recognizing the freedom of individuals "verbally to oppose or challenge police action without thereby risking arrest"); *Duran,* 904 F.2d at 1375–78 (finding arrest of an individual for directing obscene gestures and words toward police officers violated clearly established law that police officers may not exercise their authority for personal motives, especially in response to an individual's criticism or insults); *Ford*, 706 F.3d at 1193 ("Ford's criticism of the police for what he perceived to be an unlawful and racially motivated traffic stop falls 'squarely within the protective umbrella of the First Amendment and any action to punish or deter such speech . . . is categorically prohibited by the Constitution'") (citing *Duran*).

Defendants attempt to distinguish these cases on the facts, arguing that, in *Duran*, the police officers' *only* reason for stopping the motorist was due to his taunts and obscene gestures; therefore, unlike here, the officers had no legitimate reason for the stop. (Doc. 13 at 2−3.) Defendants imply that, because Tevault had another reason for his adverse actions against Baker—namely, that Baker had failed to stop for an officer—the facts in *Duran* are too far removed to place a police officer in Tevault's position on notice that his escalation of force against Baker for speaking out during his arrest was unlawful. At this stage, however, where the Court must believe Baker's facts and draw all plausible inferences in Baker's favor, the Court has already found that Baker states a viable claim that Tevault used additional force, including a violent take-down of Baker to the ground, when Baker began to verbally challenge Tevault's actions and that these actions were in retaliation for Baker's speech. Seen in this light, a reasonable officer would have known from *Duran* that the exercise of his authority for personal motives in response to Baker's question and implied criticism was unlawful.

Following *Duran*, the Ninth Circuit in *Ford* also found a viable First Amendment claim where an arresting officer made comments when taking the plaintiff into custody showing that, even though the arrest was discretionary, the plaintiff would not have been

arrested "but for" his protected speech of talking back to the officers and accusing of them making a racially motivated stop. 706 F.3d at 1194−95. As to whether qualified immunity applied in that case, the Ninth Circuit found that "[p]olice officers have been on notice at least since 1990 that it is unlawful to use their authority to retaliate against individuals for their protected speech." *Id.* at 1195 (citing *Duran*, 904 F.2d at 1375–78).

Defendants also attempt to distinguish *Ford* on its facts, arguing that, in *Ford*, the officer did not use force until after the plaintiff-motorist complained that his treatment was racially motivated instead of, as here, before any words were spoken. (Doc. 13 at 2.) Once again, however, Defendants' interpretation of the facts as showing an uninterrupted use of force stemming solely from Baker's failure to stop his vehicle relies on construing the facts in Defendants' favor, and the Court must construe the facts in Baker's favor when ruling on a motion to dismiss. *See Outdoor Media Group, Inc*, 506 F.3d at 900 (the pleadings are to be construed in the light most favorable to the nonmovant). Construing the pleadings in Baker's favor, Baker's attempt to verbally challenge Tevault's actions during the traffic stop immediately preceded and plausibly caused Tevault's violent take down of Baker, even while Baker was not resisting and was already being placed in handcuffs.

Defendants also argue that *Ford* does not apply here because, in *Ford*, the officer specifically voiced his retaliatory motive, whereas, in this instance, Tevault made no explicit retaliatory remarks. (*Id.*) This distinction is immaterial to whether *Ford* clearly established a First Amendment violation in this context, however, because it is not necessary for a police officer to announce his retaliatory motive when taking an adverse action against an arrestee for the right to be free from retaliation to apply. Here, Baker has alleged sufficient facts from which to plausibly infer that Baker's attempt to point out why he had been unable to stop his vehicle—thereby challenging Tevault's actions—was the impetus for Tevault to use additional force against Baker. *Ford* speaks to such facts and would have put a reasonable officer in Tevault's position on notice that the use of further, more extreme adverse actions based on Baker's exercise of protected speech was unlawful.

- 12 -

Based on the above, Tevault is not entitled to qualified immunity on Baker's First Amendment retaliation claim, and the Court will deny Defendants' Motion to Dismiss as to this claim.

### 2.     **Intentional Infliction of Emotional Distress**

Defendants argue that Baker fails to state a claim for intentional infliction of emotional distress against Defendant Tevault in Count Four. (Doc. 10 at 8−9.) Because the parties have already stipulated to the dismissal of all Baker's state law claims against Tevault with prejudice, this claim will be dismissed, and the Court need not address whether Baker states an intentional infliction of emotional distress claim. Baker also concedes to the dismissal of this claim in his Response, making Defendants arguments for dismissal moot. (Doc. 11 at 8.)

The voluntary dismissal of Defendant Tevault as to this and the state law battery claim in Count Three would also appear to require the dismissal of Tevault's employer, the City of Surprise, on the ground that vicarious liability cannot lie where a plaintiff's underlying claims against the agent/employee have been dismissed. *See*, *e.g.*, *Law v. Verde Valley Med. Ctr.*, 170 P.3d 701, 705 (Ariz Ct. App. 2007) ("When a judgment on the merits— including a dismissal with prejudice— is entered in favor of the [tortfeasor], there is no fault to impute and the party potentially vicariously liable . . . is not ' responsible for the fault' of the other person"); *Ford v. Revlon, Inc.*, 734 P.2d 580, 584 ( Ariz. 1987) ("[W]hen the master's liability is based solely on the negligence of his servant, a judgment in favor of the servant is a judgment in favor of the master.").

Despite this established principle, neither party addresses Baker's state law claims against the City of Surprise, either in their Stipulated Motion to Dismiss or in the instant briefing. For this reason, the Court will require Baker, within 10 days of this Order, to show cause why his state law claims against the City of Surprise in Counts Three and Four should not also be dismissed following the dismissal with prejudice of Tevault as to these claims.

. . . .

### 3. Negligent Hiring, Supervision, or Training

An employer is subject to liability for harm caused by an employee or agent if the employer was negligent or reckless in hiring, supervising, or otherwise training the employee. *See* Restatement (Second) Agency § 213. But an employer cannot be held liable for negligent hiring and supervision "merely because the one employed is incompetent, vicious, or careless." *Kassman v. Busfield Enterprises, Inc.* 639 P.2d 353, 356 (Ariz. App. 1981) (quoting Restatement (Second) of Agency § 213, Cmt. (d) (1958)). Rather, when a risk of harm exists and the harm alleged is caused by the dangerous quality of the employee, the employer may be held liable for negligent hiring or supervision only if the employer "had reason to suppose" the employee was likely to cause such harm. *Id.* For a negligent supervision claim, "the plaintiff must allege that an employee committed a tort, that the defendant employer had a reason and opportunity to act, and that the defendant failed to perform its duty to supervise." *Kuehn v. Stanley*, 91 P.3d 346, 352 (Ariz. Ct. App. 2004). To state a claim for negligent training, a plaintiff must allege facts regarding the training that a defendant's employees received and showing that a defendant's training or lack thereof was negligent. *Perry v. Arizona*, CV-15-01338-PHX-DLR, 2016 WL 4095835, at *2 (D. Ariz. Aug. 2, 2016) (citing *Cotta v. Cnty. of Kings*, 1:13-cv-00359-LJO-SMS, 2013 WL 3213075, at *16 (E.D. Cal. June 24, 2013) (dismissing negligent training and supervision claim because complaint did not allege facts regarding the training of prison personnel)).

Defendants argue that Baker's negligent hiring, supervision, and training assertions fail to state a claim because Baker makes no more than bare, conclusory allegations that Tevault was "not adequately trained" or "needed additional training and supervision" but provides no specific facts to suggest that Tevault was unfit for his position, was hired with knowledge that he was unfit, was not properly supervised, or was not trained according to the proper standard of care for police officers. (Doc. 10 at 10−11.)

Baker concedes that he has failed to allege sufficient facts to state a plausible claim for negligent hiring, but he states that he expects to gain additional facts through discovery

that may allow him to state such a claim. (Doc. 9 at 9.) Baker nonetheless argues that he has alleged sufficient facts to state a claim for negligent supervision and training because he alleges that Tevault has been the subject of numerous prior accusations of misconduct, including excessive use of force and other violations of police policies and procedures, from which it is plausible to infer that the City of Surprise knew or should have known that Tevault required additional supervision and training and did not take reasonable remedial steps to prevent Baker's injuries. (*Id.* at 8.)

Baker's allegations in this count, whether intended to show negligence in the City's hiring, supervision, or training, are, as Defendants argue, merely conclusory and insufficient to state a claim. Baker's only substantive allegations are that, "upon information and belief," Tevault had previously been accused of multiple infractions—"far more than . . . a typical officer with the same or more years of employment in law enforcement"—including excessive use of force and other violations, from which the City knew or should have known that Tevault "was not a competent police officer," was "unfit for the job," and "needed additional training and supervision." (Doc. 1 ¶¶ 54−55, 57.) But these bare allegations of multiple prior infractions, based only on "information and belief," do not meet federal pleading standards for stating a claim. "In the post-*Twombly* and *Iqbal* era, pleading on information and belief, without more, is insufficient to survive a motion to dismiss for failure to state a claim." *Talk Radio Network Ent's v. Cumulus Media Inc.*, 271 F. Supp. 3d 1195, 1207 (D. Or. 2017) (internal quotation marks and citations omitted). Instead, "a pleading must be 'plausibly suggesting (not merely consistent with)' behavior to satisfy threshold pleading standards. *Id.* (quoting *Twombly*, 550 U.S. at 557)); *see also United States v. Ctr. for Diagnostic Imaging, Inc.*, 787 F. Supp. 2d 1213, 1221 (W.D. Wash. 2011) ("A plaintiff relying on 'information and belief' must state the factual basis for the belief, but plaintiffs have failed to do so").

As with his negligent hiring assertions, Baker may expect, through discovery, to identify prior instances in which Tevault has been accused of excessive use of force and/or other misconduct during arrests, but the Complaint is currently devoid of any factual bases

plausibly supporting the assertions of multiple prior violations, which appear to be based on mere speculation, not on specific facts. Apart from these suppositions, Baker provides no facts from which to infer that the City knew of and negligently failed to address a need for Tevault to receive additional supervision or training prior to the events alleged in this action. Nor does he allege any facts regarding the supervision or training Tevault received to show that the City's supervision and training or lack thereof were negligent. Accordingly, Baker fails to state a negligent hiring, supervision, and training claim against the City, and the Court will dismiss this claim without prejudice.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is **withdrawn** as to the parties' Stipulated Motion for Dismissal of Defendant Tevault as to all State Law Claims (Doc. 9) and Defendant Tevault's Partial Motion to Dismiss (Doc. 10).

(2) The Stipulated Motion for Dismissal of Defendant Tevault as to all State Law Claims (Doc. 9) is **granted**; all state law claims against Defendant Tevault are **dismissed with prejudice**.

(3) Defendants' Motion to Dismiss (Doc. 10) is **granted in part** as to Plaintiff's negligent hiring, supervision, or training claims against Defendant the City of Surprise in Count Five, and this claim is **dismissed without prejudice**.

(4) The remaining claims in this action are Plaintiff's Fourth Amendment excessive-use-of-force claim against Defendant Tevault in Count One, his First Amendment free speech/retaliation claim against Defendant Tevault in Count Two; (3) and his state law battery and intentional infliction of emotional distress claims against Defendant the City of Surprise in Counts Three and Four.

(5) Within **10 days** of this Order, Plaintiff must file a response to the Order to Show Cause, stating why his state law battery and intentional infliction of emotional distress claims against Defendant the City of Surprise in Counts Three and Four should not be dismissed based on the stipulated dismissal with prejudice of these claims against

Defendant Tevault; failure to respond to the Order to Show Cause within ten days may result in the dismissal with prejudice of these claims.

Dated this 29th day of March, 2021.

James A. Teilborg
Senior United States District Judge